## SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY v. PARKER.

1. This court can not say, as matter of law, that the court below erred in holding that the person served with copy and process in this case was an agent of the defendant, within the meaning of the Civil Code, §§ 1899, 1900.
2. Nor did the court err in holding that the sheriff's return of service, as amended, was legally sufficient.
3. The trial judge did not abuse his discretion in refusing to open the default, for any of the reasons assigned in the motion presented by the defendant.
4. The amendment to the plaintiff's petition, allowed by the court at the trial, did not materially change his cause of action, and therefore did not open the petition to demurrer or plea.

5. The jury, under the state of the pleadings, being confined to the question of the amount of the damages suffered by the plaintiff, and no complaint being made in the motion for a new trial that their finding was excessive, the court below committed no error in refusing a new trial.

Argued January 22, — Decided March 7, 1904.   Rehearing denied March 30, 1904.

Action for damages.    Before Judge Littlejohn.    Macon superior court.    June 9, 1903.

*Burton Smith, Greer & Felton, Roland Ellis, Hall & Wimberly, Dorsey, Brewster & Howell*, and *Sanders McDaniel*, for plaintiff in error.    *Lane & Maynard*, contra.

TURNER, J.    The plaintiff below, Roy Parker, brought suit against the Southern Bell Telephone & Telegraph Co., in the superior court of Macon county, and in his petition set forth the following allegations:    The defendant company is a corporation duly chartered under the laws of Georgia, and had and operated, on the second day of April, 1901, a line of telephone wires and telephones, in said county, for the use of the public and for hire; and also had on that day, and still has, in that county, an agent for the transaction of its business.    Plaintiff is a merchant and is engaged in business in the town of Oglethorpe, Ga.    Prior to the second day of April, 1901, the defendant company placed one of its telephones in plaintiff's store, at his instance and request, for use in his business, he having paid therefor the usual charges. This telephone was negligently, carelessly, unskillfully, and unscientifically placed in his store by said company, in this: that said company neglected and failed to attach and connect a ground wire to said telephone, and also neglected and failed to attach and equip the telephone apparatus with the necessary and usual appliances to prevent injury and damage from lightning or electricity; all of which was usual and necessary for the safety of one using the telephone.    Plaintiff applied to the agent of the company to have the aforesaid appliances attached and placed and connected with the telephone in his store, and gave warning of the dangerous condition in which the telephone had been left by the company; but notwithstanding this notice and warning that the telephone was incomplete and dangerous, the company continued to neglect to attach the necessary appliances to render the use of the telephone safe and thus prevent injury to persons near the same at all times.    On April 2d, 1901, the plaintiff, while standing

about four feet distant from the telephone, was suddenly struck by a volt of electricity transmitted and conveyed over said telephone wires to this telephone, and from it to him, by which volt of electricity plaintiff was knocked senseless to the floor, and from the effect of which he remained unconscious for a considerable time. For several days his suffering was so intense as to require him to have medical attention; the shock to his entire system was so severe as to leave him partially paralyzed; and although some ten months had elapsed since his injuries were received, he had not fully recovered from the effects of said shock, continued to suffer from his injuries, and feared that they might prove permanent. By reason of the aforesaid gross negligence on the part of the defendant company, he had been damaged in the sum of $1,990, for which amount he prayed judgment against it.

The process attached to the plaintiff's petition was directed against the defendant company, and the entry of service made by the sheriff was as follows: "I have this day personally served Dr. M. F. Crumley, agent of the Southern Bell Telephone & Telegraph Company at Oglethorpe, Ga., with a copy of the within writ and process. This February 27, 1902." No appearance was made by the defendant at the first term of the case, which was on the second Monday in May, 1902. At the November term following, the sheriff was allowed to amend his entry of service so as to make it read as follows: "By permission of the court, I hereby amend my entry of service by saying that I served the defendant by personally serving Dr. M. F. Crumley, agent in charge of the office of the Southern Bell Telephone & Telegraph Company at Oglethorpe, Ga., with a copy of the within writ and process. This November 10, 1902." At the November term, 1902, the defendant appeared and filed a traverse to the return of service, on the grounds, (1) that service had not in fact been made upon any officer or agent of the company; and (2) that even if there had been an attempt to perfect service in the manner recited in the sheriff's return, Dr. Crumley was not such an agent of the company as that service on him would bind it. The sheriff was made a party to the traverse, and was duly served. Counsel for the respective parties agreed that the issues thereby raised should be passed on by the court without the intervention of a jury. A hearing on the traverse was had at the May term, 1903,

at which time the judge, after the evidence relied on by the de-
fendant company had been submitted, announced his decision
that the traverse had not been sustained.    Thereupon the defend-
ant challenged the sufficiency of the service, as shown upon the
face of the sheriff's return, conceding, for the purposes of its con-
tention, that his entry was true, but denying its legal sufficiency,
because it did not disclose that the company had any place of
transacting its usual and ordinary public business in Macon
county, or elsewhere within the jurisdiction of the court, nor that
the office of which Dr. Crumley was alleged to be in charge was
the place of transacting the usual and ordinary public business of
said corporation, nor that service was perfected upon the defend-
ant in accordance with the provisions of the Civil Code, § 1899.
The court held the return of the officer to be legally sufficient,
and declined to quash the entry of service or to dismiss the suit
for want of proper service.

Counsel for the defendant then made a motion to open the
judgment of default which had been rendered at a previous term.
This motion recited, that, while the company had branch offices
located at several named cities in this State, the defendant had
never established a telephone exchange or had an operator or regu-
lar agent or place of transacting its usual and ordinary business
in Oglethorpe, Ga., though it did have at that point a long-distance
telephone toll-station, located in the drug-store of Dr. Crumley,
who was authorized to receive toll from customers using the tele-
phone placed in his store, and who was paid a commission on the
tolls received at that station.    The grounds on which this motion
was based were, in substance, that it was never contemplated by
the company that he should represent it in the matter of receiving
notices of suits ; that none of the company's officers or any person
authorized to act for it had any notice of the plaintiff's suit until
a short time before the November term, 1902, of the court wherein
it was pending ; that if service was ever made upon Dr. Crum-
ley; he wholly failed to advise the defendant of such service ;
that the company had a meritorious defense, and that unless the
judgment of default were opened and it were allowed to file a plea
to the merits, a great hardship would be worked upon it, amount-
ing to a denial of the protection guaranteed it by the 14th amend-
ment to the constitution of the United States.    After argument

had upon this motion to open the judgment of default and allow the defendant to file an answer, the presiding judge entered an order overruling the motion. Immediately thereafter, and before the case proceeded to a trial on its merits, counsel for the defendant moved orally to dismiss the plaintiff's petition, on the ground that there was no allegation therein that his alleged injury occurred in Macon county, and therefore the jurisdiction of the court was not made to appear. The court, after announcing that he would sustain the defendant's motion to dismiss the suit, permitted the plaintiff to amend the second paragraph of his petition by inserting an allegation disclosing that the store wherein he was injured was located at Oglethorpe, in Macon county, Ga. Counsel for the company then asked leave of the court to answer the petition, insisting that the amendment thereto was material, and accordingly it was the right of the company to then interpose its defense. The judge declined to permit the company to file its proposed answer, but stated to counsel that they could, if they so desired, answer that paragraph of the plaintiff's petition which had been amended so as to allege the necessary jurisdictional facts. The case was thereupon submitted to the jury and tried upon the only issue presented for determination by the pleadings, viz., the amount of damages sustained by the plaintiff; and a verdict for $807.08 was returned in his favor. The defendant company subsequently filed a motion for a new trial, and, upon its being overruled, sued out a bill of exceptions to this court, therein assigning error upon each of the several rulings mentioned above as having been invoked by the defendant during the progress of the case, and also upon the refusal of the judge to grant it a new trial.

1. The evidence introduced in support of the traverse showed that the defendant company had, in the town of Oglethorpe, Ga., what is known as a long-distance telephone toll station, which was placed in the charge of Dr. Crumley, whose duty it was to collect fees or tolls from patrons of the company and to give such patrons desired connections with the telephone system which had been established in the city of Americus. The operators in charge of the exchange located in that city connected the telephone at Oglethorpe, when called on to do so by Dr. Crumley, with other telephones located in Americus and in adjacent towns, so that the company's patrons at Oglethorpe could get into communication

with parties at Americus and at other points where telephone service had been established by the company. " A toll station is a station where your message is paid for, for talking, at a certain rate of toll, governed by the location or distance of the station at which the party is." There were a number of toll stations under the management of the central office at Americus. The company " never ran a toll station without some one in charge of it as collector," who was in that sense the company's agent, and was, as such, held responsible for the tolls he received from its patrons. The manager at the central office would " check him up each morning." Dr. Crumley, who was the collecting agent at the toll station established in Oglethorpe, looked after that " little station in the way of managing the business," but he had " no authority whatever to make contracts for defending suits, or anything of that sort." The telephone was placed in a booth in his store, and he was " in charge of the protection and care of the instrument, to see that it was not abused or harmed;" and he was under a duty " to do such work about the instrument as would assist the Americus office in keeping the line in good shape." He attended to the " cleaning of the carbons on the lightning arrestors;" but probably did " nothing else, unless it was to change fuses in the office; all the rest was done by the lineman from the Americus exchange, and that only was done for the purpose of saving the expense of sending a lineman from the Americus office to do those things. There was no responsibility resting upon Dr. Crumley to report all things arising as necessary or important. As a matter of accommodation," the company's manager " expected him to do that, but only as a matter of accommodation." He was paid for receiving such tolls as he was directed to collect, and was furnished with a printed list " of charges from one station to another," to which he could refer. If a patron talked longer than the time limited for the minimum toll, the extra charge was fixed at the Americus office, the operators in which did " the timing " in all instances. On February 26 and 27, 1902, the company had two telephones at Oglethorpe, one " a regular toll station," and the other what was called " a switch-service station, which was also a toll station, at the store of Roy Parker," the plaintiff. Dr. Crumley was paid a small amount per month " for switching service to the station of " Parker, who, it would seem, could get into communication

with the central office at Americus only through the toll station placed in Dr. Crumley's drug-store. It appears from the recitals of a written contract between the company and Dr. Crumley, which was offered in evidence, that he was " to furnish the necessary office room for the instruments and accommodation of patrons ; . . to facilitate and encourage the use of the telephones and promote the business as much as possible; . . to collect a toll, at the schedule rate, for every talk through the instruments " placed at his station; " to keep records and make reports and pay over or remit balances of money due the company, in accordance with such instructions" as might, from time to time, be given him from the central office. The contract further stipulated that the telephone instruments were to " receive proper care," and were " not to be removed from one place to another except by a duly authorized employee of the company ; " and that Dr. Crumley was to receive, for the services rendered by him, certain commissions on all tolls paid by patrons of the company at his station. His understanding of the relation he bore to the company is indicated by the following statement which he made as a witness in its behalf: " There was an office of the company in my store. I was the agent of the company and transacted the company's business," being held responsible for all the receipts of this office at Oglethorpe.

In view of the evidence above set forth, the question presented for determination is whether or not Dr. Crumley was an " agent" of the company within the meaning of the Civil Code, §§ 1899, 1900, which provide how service may be perfected on corporations of the class to which the defendant company belongs. If so, personal service on him as its agent would undoubtedly bind the company, and the return of the sheriff, as amended, should be held to be legally sufficient. This question is a close one. But we can not say that the court below erroneously held that Dr. Crumley was such an agent as the above-cited sections of the code contemplate. Of course it was never intended that a corporation should be bound by service on a mere employee or a mere servant of the corporation, in a limited sense. At the same time, it is not necessary that service should be made upon one who is, in a technical sense, an official of the corporation to be served; for section 1899 expressly declares that service " may be

perfected by serving any officer or agent of such corporation." While Dr. Crumley was certainly not an officer of the company, equally clear is it that he was not its mere servant, nor one to whom the term "employee" as commonly understood, could properly be said to apply.    Apparently he belongs to that large class to the various members of which the broad term of "agent" is indifferently applied, without any attempt to distinguish one type from another.    The cardinal rule of construction to be looked to and followed in giving effect to a statute is, as stated in the Political Code, § 4, that the "ordinary signification shall be applied to all words, except words of art," etc.    There is nothing in the language of either of the sections of the Civil Code above referred to which suggests that the word "agent," as therein used, was intended to be understood in any unusual, limited, or restricted sense, or otherwise than is justified by its ordinary signification. Had the governing officials of the company so understood the statute, doubtless they would have frankly accorded Dr. Crumley recognition as its "agent" and instructed him as to his duty with respect to notifying them when service was made on him as the local representative of the company at Oglethorpe, through whom it conducted all the business with its patrons at that point.    Counsel for the company do not, as we understand their argument, for a moment contend that the term "agent," as commonly employed, can not fairly be applied to one occupying the position of trust and confidence which was filled by the company's representative in that town ; but, on the contrary, merely insist that it is unreasonable to suppose that the legislative will was that this term should be understood according to its ordinary signification or in its broad and popular sense.    In other words, the argument of counsel was addressed to the consideration of the possible, if not probable, hardship which an application of the cardinal rule of construction above referred to would necessarily impose upon their client and other corporations.    While, perhaps, we are authorized to take for granted that statutes are not intended to operate harshly or unreasonably, still we can not ignore the well-established rules of construction, with reference to which statutes must be deemed to have been framed ; else we might fall into the error of substituting our own views of the reasonableness of a statute for those of the General Assembly, by which the measure

was, supposedly, deliberately discussed and considered before being enacted into law.

2. Read in connection with the provisions of the Civil Code, §§ 1899, 1900, the entry of service made by the sheriff was, in its amended form, legally sufficient; for it showed that service had been perfected in one of the modes prescribed, viz., by personally serving an agent of the company who was in charge of its office at Oglethorpe. This being so, it was wholly unnecessary that the return of the officer should show at what point within the county of Macon the company transacted its usual and ordinary business, or that the agent served was the company's representative having charge of such business. The trial judge therefore properly refused either to quash the entry of service or to dismiss the suit for want of legal service upon the defendant.

3. The motion made by the defendant to open the default recited that it was presented more than thirty days after that judgment was entered. Indeed, it was for the first time made at the term at which the trial was had. If, as we are constrained to hold, the company was bound by the service made upon its representative at Oglethorpe, we can not say that the trial judge abused his discretion in refusing to open the default for any of the reasons assigned in that motion. See Civil Code, § 5072. This court has held that while, by statute, a judge is given much latitude in this respect, he has no power to act arbitrarily, but must exercise a sound and legal discretion. See *Deering Harvester Co.* v. *Thompson*, 116 *Ga.* 418, and cit.

4. The amendment to the plaintiff's petition, which the court allowed him to make at the trial, did not materially change his cause of action, but merely served to set forth facts disclosing that the court had jurisdiction to entertain his suit. Therefore the making of this amendment did not open the plaintiff's petition to demurrer or plea. Civil Code, § 5068; *O'Connor* v. *Brucker*, 117 *Ga.* 451.

5. As the pleadings stood when the case came on for trial before the jury, the only question presented for determination was as to the amount of damages suffered by the plaintiff. *Lenney* v. *Finley*, 118 *Ga.* 427. The evidence bearing on this question demanded a finding in his favor in some amount, and fully warranted the verdict returned by the jury. Indeed there is in the

defendant's motion for a new trial no complaint that their finding was excessive. The motion raises no question not covered by the foregoing discussion; and no reason appears why the company should have been granted a new trial.

On the argument before us, counsel for the company called attention to the fact that the return of service originally made by the sheriff was not such as would authorize the entering of a judgment of default at the first term of the case; and in this connection counsel insisted the company should have been permitted to file its defense, inasmuch as the judgment of default was to be treated as a mere nullity. But we can not undertake to pass upon this matter, as no question of this kind appears to have been raised in the trial court, and certain it is that there is in the bill of exceptions no assignment of error which brings the matter under review.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*