## SMITH *et al.,* executors, *v.* SOUTHERN RAILWAY CO.

This being a suit for a penalty under the Civil Code, § 2244, and it appear ing from the evidence that the person on whom service of the notice provided for in the Civil Code, § 2243, was made was not an agent or officer of the defendant, the court committed no error in awarding a nonsuit.

Argued June 19, 1908.—Decided February 17, 1909.

Action for penalty. Before Judge Wright. Floyd superior court. October 21, 1907.

The plaintiffs brought suit against the defendant, making substantially the following allegations. The defendant operates a line of railroad across and at right angles to the boundary line between land lots 175 and 176. The plaintiffs own that portion of land lot 175 lying next to the other land lot. There was a fence between said lots on the dividing line that would have protected the plaintiffs' crops and fruit trees but for the fact that there were no cattle-guards on the railroad track on the dividing line. On February 9, 1906, the plaintiffs served a written notice on A. McCollister, an agent of the defendant, to build the cattle-guard. The defendant failed to build the cattle-guard within thirty days after the service of the notice, and did not build it until April 5, 1906. The plaintiffs contend that, by reason of such failure, the defendant became indebted to them in the sum of $25 per day from March 10, 1906, to April 6, 1906, and they sue to recover $675, with interest thereon since April 6, 1906. Upon the trial the plaintiffs introduced evidence to show the building of the fence as alleged, and the failure of the defendant to build the cattle-guard referred to in the petition. They also introduced evidence to show that that portion of land lot 175 lying next to land lot 176 belonged to Norris N. Smith

and Halsted Smith at the time of the service of the notice. They proved the death of Halsted Smith and that Norris N. Smith and Mabel Smith were executors of his last will and testament. There was also introduced in evidence the will of Halsted Smith, wherein he bequeathed his interest in that portion of land lot 175 lying next to land lot 176 to Norris N. Smith. Evidence was introduced to show that at the time of the commencement of the suit this interest in the land was not turned over to the legatee, but the title and possession thereof were still in the executors. The plaintiffs introduced in evidence a certified copy of the notice directed to the defendant, requesting it to build the cattle-guard referred to. This notice was signed by Norris N. Smith individually and by Norris N. Smith, agent for Halsted Smith, and witnessed by a notary public, who made the proper certificate. One of the plaintiffs, Norris N. Smith, testified that he took the notice to the defendant's office and inquired for Col. Lavender, and he was out on account of the sickness of his wife, and that he served the notice on A. McCollister as the agent of the defendant. A. McCollister, a witness for the plaintiff, testified as follows: "This notice there—I have a recollection of a paper about like this being served on me. I remember Norris N. Smith bringing some paper to me. I can't tell as to the date. When he brought that paper in, I do not know where Mr. Lavender was. I do not remember having any conversation with Mr. Smith, telling him where Mr. Lavender was. Mr. Lavender was the regular agent at Rome. In his absence from the city in February, 1906, I represented Mr. Lavender, but I did not act as agent. In representing him, everything was done in his name as agent. My acts were not always reported to Mr. Lavender. It simply takes too much time. Did not report them to anybody. I was not required to. My acts were treated as sufficient—so far as I knew, accepted by the company. The acts I performed for the company in the absence of Mr. Lavender, the regular agent, were accepted by the company and without objections. I acted as chief clerk representing the agent. If they were correct and in due form, they were received; if they were wrong, I would hear from them. I did not hear from them about this notice in any way that I know of. I reported that notice to the superintendent, whoever he may be. I am sure I reported it to him, reasonably sure. I was

never criticized about this, that I remember. I do not know whether I reported it to Mr. Lavender or not. I do not remember whether I showed him that notice. In the absence of Mr. Lavender there was nobody else in the office there higher in authority than myself, not at that time in February, 1906. I was the chief clerk in representing the company. I was next in authority. In his absence there was no other agent here in Rome representing the company—not in the freight department. Capt. Seay was in the traffic department. It is moving the freight and soliciting business and looking after complaints for non-delivery of freight, etc., and see that the freight is moved. I do not know what he had to do outside of that. I know that he is considered as soliciting agent of freights. I was in the freight department. The handling of freights went through the department I was in; you might call it handling them. I presume I sent that notice on to the superintendent of the company, of the Southern Railway Company. My best recollection is that I did give it the proper direction, sending it to the proper authority, by handling it in the proper way. I have no recollection of having received this particular paper, nor what I did with it. I have had papers of that description and nature. I just assume from things generally that I did so and so. I remember Mr. Smith coming in there about some papers, some cattle-guard or business connected with it, or something of the kind, but I don't burden my brain with them to remember them. I remember telling him at the time I did not have anything to do with it, but I would give it proper direction. I mean the direction the agent would do if he were there. As I understand it, Mr. Lavender is agent there and I his chief clerk. He gets his orders from the company and transmits them to me, and I act at his direction. When he is away I carry on the ministerial work of the office, using his name to do it to the best of my knowledge and ability. If a matter comes up about which I am doubtful, I refer it to him, or anything that requires the exercise of such judgment that the agent is required to use. The Southern Railway Company had an agent over at East Rome at that time; well, I believe they had a ticket-agent. I am not sure about their having an agent in North Rome, they have changed so often. They had one at Lindale, and that is in this county; and I understand one at Coosa in this county. Capt.

Seay was soliciting freight agent. There was a city passenger-agent next door to me. I do not know where Mr. Lavender was February 9, 1906, whether he was out of town or whether he was just temporarily out of the office. I do not know where he was. I take no note of his movements. I do not know whether he was out of town at that time. The office I stayed in and worked in was not the principal office in this county of the defendant company. I would not consider it so. It was the principal freight office. I expect that we are about the largest freight depot in the county. I believe it is. There is no other freight office of the Southern Railway Company in this county that handles one tenth of the freight we handle here. I think not. Our office was the principal freight office in the county as regards the amount of traffic handled and the amount of work and people in it. Then you might call it the principal office of the Southern Railway Company in this county. There are eight clerks in the office where I work altogether. That includes the whole force at the depot, including myself. I think there were nine connected with the handling of the business from the station, from the transfer platform up to the agent. I think nine is the proper number." This witness further testified, that he remembered receiving the notice, and that he sent it to the superintendent of the division in which he was working; that he could not remember that particular paper, but that it was his duty to send all such matters to the party who had authority to remedy them; that, outside of his knowledge that he performed his duty, he had no positive independent recollection of what he did with this particular paper. In reply to a question by the court, "Have you any recollection at all about what you did with it?" the witness answered: "I might say that I have not; I handled so many papers of that description; . . there is so much detail work in the office, I can't put everything up to the agent; but in case of a paper or anything like that, that I would hold until Mr. Lavender was present and he would tell me what to do with it, but simply matters of routine in the office I handled them without referring them to him." And the witness further testified that he remembered Mr. Smith coming into the agent's office and giving him the papers, and that the ordinary course would be for the paper to be sent to the superintendent; that it may have been best for him to have re-

ferred the paper to Mr. Lavender, but he might not have done so. Upon the conclusion of the plaintiffs' evidence, the court granted a nonsuit, and to this order the plaintiffs filed their exceptions.

*Dean & Dean,* for plaintiffs, cited, on agency; Bradstreet Co. *v.* Gill (Tex.), 2 L. R. A. 209 (9 S. W. 753); Neibles *v.* Minn. R. Co., 33 N. W. 332; *Indiana Fruit Co.* v. *Sandlin,* 125 *Ga.* 222; *Cable Co.* v. *Walker* 127 *Ga.* 65; *Wilson* v. *Huguenin,* 117 *Ga.* 546; Hughbanks *v.* Boston Inv. Co. (Iowa), 60 N. W. 640; Barnett *v.* Glutting (Ind.), 29 N. E. 927; Saginaw R. Co. *v.* Chappell (Mich.), 22 N. W. 278; Western Union Tel. Co. *v.* McLeod (Tex.), 25 S. W. 721; Cloran *v.* Houlehan (Me.), 33 Atl. 986; Sturtevant *v.* Wallack (Mass.), 4. N. E. 615; State *v.* Bristol Bank (Ala.), 18 So. 533.

*Maddox, McCamy & Shumate* and *George A. H. Harris & Son,* for defendant.

HOLDEN, J. (After stating the facts.) 1. The plaintiffs brought suit to recover the penalty of $25 per day provided for in Civil Code, §2244, because of the failure of the defendant to erect a cattle-guard within 30 days after notice was served on the defendant to erect such cattle-guard, as provided in the Civil Code, § 2243; and to the order of the court, granting a nonsuit at the conclusion of plaintiffs' evidence, they excepted. The defendant contends that the notice directed to it was not served on any agent or officer of the defendant, but that A. McCollister, on whom it was served, was neither an agent nor officer of the company. The Civil Code, §2243, provides: "Thirty days written notice to build such cattle-guards shall be served on any agent or officer of such company, by the owner of the lands to be affected by such cattle-guards." One of the main questions involved in this case is whether or not A. McCollister, on whom the notice was served, was an officer or agent of the defendant at the time. The testimony of A. McCollister, a witness for the plaintiff, is set out in full in the statement of facts. Among other things, he testified as follows: "Mr. Lavender was the regular agent at Rome. In his absence from the city in February, 1906, I represented Mr. Lavender, but I did not act as agent. In representing him, everything was done in his name as agent. . . As I understand it, Mr. Lavender is agent there, and I his chief clerk. He gets his orders from the company and transmits them to me, and I act at his

direction. When he is away I carry on the ministerial work of the office, using his name to do it to the best of my knowledge and ability. If a matter comes up about which I am doubtful, I refer it to him, or any thing that requires the exercise of such judgment that the agent is required to use. . . There are eight clerks in the office where I work altogether. That includes the whole force at the depot, including myself. I think there were nine connected with the handling of the business from the station, from the transfer platform up to the agent. . . I handled so many papers of that description; . . there is so much detail work in the office I can't put everything up to the agent; but in case of a paper or anything like that, that I would hold until Mr. Lavender was present and he would tell me what to do with it, but simply matters of routine in the office I handled them without referring them to him." It does not appear from the record whether McCollister was employed and paid by Lavender or by defendant. It can not be contended that McCollister was an officer of the company. Was he an agent of the company on whom service of the notice could be made? If he was not an agent, but merely an employee or servant of the defendant, no proper service was made, and the granting of the nonsuit was proper.

We do not think that McCollister, on whom the notice was served, was an agent of the defendant within the meaning of the statute under consideration. His main work consisted in looking after the routine duties of the office. An agent on whom service could be made under the statute would not be a clerk in the office of a station agent who performed the routine work of the office. McCollister did not sustain such a representative capacity towards the corporation as would make service on him good as the ·agent thereof. The chief clerk in an office, doing the routine work of an officer, could not be said to be an officer; nor do we think that the chief clerk in the office of a station agent, doing merely the routine work of that office, could be said to be an agent, within the meaning of the statute under consideration. It is true that McCollister did most of the acts which· the agent was required to perform, but he did them in the name of the agent, and signed the agent's name when necessary. McCollister necessarily had some discretion in the work he did, but every servant or employee has some discretion about the particular work in which he is en-

gaged. McCollister had no general authority or discretion, and his work was immediately under the express direction of the station agent, or the doing of specified things in accordance with previous instructions from him. A station agent is usually one falling within the common acceptation of the term "agent of a railroad company," but an employee in his office as his chief clerk, doing the routine work of the office, can not be said to be an agent within the meaning of the statute referred to. This statute, when violated, subjects the defendant to the penalty provided for in the succeeding section, and, in passing upon an action to enforce such penalty, must be strictly construed.

The ruling here made does not conflict with the decision in *Southern Bell Telephone Co.* v. *Parker,* 119 *Ga.* 721 (47 S. E. 194). In 19 Enc. Pl. & Pr. 665, it is said: "Some of the statutes contain provisions for service in certain contingencies upon a 'general or special agent,' or upon 'any agent,' etc. It is generally held that the word 'agent,' as used in such statutes, applies only to such agents as have some sort of controlling authority, and not to every person employed or intrusted with a commission by the corporation." Also see, in this connection, pages 666, 676, 677, and 678 of this same volume. We think the judgment awarding a nonsuit was proper, and it is

*Affirmed. All the Justices concur, except*

Atkinson, J., dissenting. The Civil Code, § 2243, provides for service of notice "on any agent or officer" of the company. The language quoted is similar to that employed in section 1899, where suits against corporations are authorized to be served by serving "any officer or agent of such corporation." Both sections contemplate the same character of agent to be served. No provision is made in section 2243 for service "upon the agent in charge of the office or business of the corporation," as is required by sections 1901 and 4710 with respect to service of summons of garnishment on corporations. The effect of the ruling made by the majority is to apply section 2243 as if it contained the provision quoted from sections 1901 and 4710. But as section 2243 does not contain the provision requiring service to be made "upon the agent in charge of the office or business of the corporation," it should be construed and applied as if it contained only the provisions quoted from section 1899. Under such construction,

the evidence reported in the opinion by the majority was suffi-
cient to authorize the jury to find that the person upon whom the
notice was served was such an agent as the statute contemplated,
and it was erroneous to grant a nonsuit on the ground that the
person upon whom the notice was served was not such an agent
as the law required to be served.