## GEORGIA RAILWAY & POWER COMPANY *v.* HEAD *et al.*

The evidence did not authorize the judge to find that the person upon whom service of process was made was an agent of the corporation, as contemplated in section 2258 of the Civil Code of 1910, providing for service of suits against a corporation by serving its officers or agents. The plaintiff was without adequate remedy at law, and the court erred in refusing the interlocutory injunction.

No. 1729.   MAY 12, 1920.

Petition for injunction. Before Judge Jones. Lumpkin superior court. October 19, 1919.

The Gainesville Railway and Power Company built and owned a dam across the Chestatee river, in Lumpkin county, a short distance from the Hall county line. In 1912 the Gainesville company sold its street-railway system, lighting and power plants, including the Chestatee dam, to the Georgia Railway and Power Company. The latter company owned a large dam near Gainesville in Hall County, known as the Dunlap dam. It constructed a transformer station near the Dunlap dam in Hall county, and transmitted its power from the Chestatee dam at high voltage to the transformer station at the Dunlap dam. The Georgia Railway and Power Company kept from one to three men at the Chestatee dam for the purpose of opening the water-gates and turning on the water, which in turn set the machinery in motion and generated electricity which was transmitted to the Dunlap station, from which it was distributed for use. It sold no current for any purpose in Lumpkin county, and kept no office at the Chestatee dam. The men working for it at the dam had no connection whatever with the public. In March, 1918. a citizen of Lumpkin county, the main defendant in error, filed suit in Lumpkin superior court against the company, and a copy

of the petition and process was served upon J. M. Hulsey, who at that time was the only employee of the company at the Chestatee dam. Mr. Hulsey never delivered the copy suit and process to any officer or agent of the company, and the company knew nothing of the suit until after judgment was obtained in April, 1919. It then filed an equitable petition to enjoin the enforcement of the execution, and to set aside the judgment against it. In the petition it traversed the return of the sheriff, and denied that Mr. Hulsey was its agent. The injunction was denied, and the company excepted.

*H. H. Dean,* for plaintiff.

*W. A. Charters* and *H. H. Perry,* for defendants.

GEORGE, J. (After stating the foregoing facts.) The defendant in any proceeding is required to traverse the return of the sheriff or any officer of the court at the first term after notice is had by the defendant. Civil Code, § 5556. An execution can not be arrested by an affidavit of illegality until after levy made. Civil Code, § 5306. It appearing that the execution issued upon the judgment against the plaintiff in error had not been levied upon any of its property, it could not file an affidavit of illegality. Since it was necessary to traverse the entry of the sheriff at the first term after notice, equity alone could afford to the plaintiff in error complete and adequate relief.

Section 2258 of the Civil Code provides: " Service of all subpœnas, writs, attachments, and other process necessary to the commencement of any suit against any corporation in any court, except as hereinafter provided, may be perfected by serving any officer or agent of such corporation, or by leaving the same at the place of transacting the usual and ordinary public business of such corporation, if any such place of business then shall be within the jurisdiction of the court in which said suit may be commenced. The officer shall specify the mode of service in his return." Was Mr. Hulsey an agent of the company, within the meaning of the section of the code quoted, upon whom service of the petition and process could be legally perfected? The facts are not in dispute. The company owned and operated the power dam or plant in Lumpkin county. During certain seasons it kept from one to three men at its Chestatee dam, and these men worked in shifts. At the time of the service of the petition and

process upon Mr. Hulsey he alone was employed by the company in Lumpkin county. His duties were to turn on the water, which operated the machinery and transmitted the raw current to the company's station in Hall county. As noted in the preceding statement of facts, the company furnished no current in Lumpkin county. Indeed the current generated in Lumpkin county could not be used for commercial purposes until it had passed through the company's station in Hall county. The men employed by the company at the Chestatee dam were required to keep no records, and were not authorized to deal with the public. They could not employ men or discharge them, and did not do so. Each man, when more than one man was employed, reported his own time and made his own report to the officer or agent at the Dunlap dam. These reports were made over telephone, and each man was required to report hourly the amount of water used and the current generated and transmitted. They were also expected to report any trouble that might arise. Each man received directly from the company a check for his wages. Each man, when on duty, was required to keep the machinery in condition and make such minor repairs as might be necessary from time to time. It is true that one of the witnesses for the defendant in error testified, in effect, that Mr. Hulsey, upon whom the petition was served, was in charge of the Chestatee plant. But the meaning of his testimony is clearly indicated by the witness himself upon cross-examination: " One is 'boss. . . One has to go ahead. When there is one man there he is boss. There are three hours a day we have two men on shifts. When these two men are there, I suppose one is a little more, has a little more power than the other if they get in a dispute. Outside of that we all have the same orders exactly, the same services; and when Hulsey was there all three performed exactly the same service, the same orders, and [the company] paid us each exactly the same. We were employed by Mauldin in Gainesville [Hall county]. . . We sorter have an understanding among ourselves that one is a little more intelligent and knows a little more about it, and sorter between ourselves we have an understanding one man is boss. So far as the company is concerned, I never heard any of the company say Hulsey had any more authority than any other man."

The defendant in error relies on the decision in *Central Georgia Power Co.* v. *Nolen,* 143 *Ga.* 776 (3) 779 (85 S. E. 945). In that case it appeared that the person upon whom service was made was authorized and required to operate the power-plant under the immediate control of the chief engineer, with whom he was to communicate by telephone as to all matters involving discretion in the operation of the plant. He was to forward to the engineer daily log sheets or trouble reports, and perform other services not set out in the case as reported. By reference to the record of file in this court it appears that the person there served in fact employed men to do work for his company. He generally received the checks for the men at the power plant, and handed the checks to the men. He kept the time of all men working under him, usually eight or nine. Each of these men had specific duties to perform, but he had no specific duties to perform other than to see that the men at work performed their duties. It was testified that he looked after the hands "around the power-house generally," and "he [referring to the person upon whom service was perfected] looked after the business there." He himself testified: "I keep the time of the regular men. I send it to Macon. Sometimes their pay comes in regular envelopes made out to the employees, and sometimes in different envelopes. . . My duties was to see that the men could fill the place. . . Mr. Magraw [chief engineer] consults nobody else but me. . . I was the only one authorized to execute the orders of Mr. Magraw. I keep the time of all parties and send them to the Macon office. . . I make no contracts for the delivery of power to customers. Mr. Magraw employs me. I usually try to give men who live in the community places in preference to others. I keep a bunch of applications on file. Then I 'phone Mr. Magraw to see if it is satisfactory. If he is satisfied I employ the person. I have blanks and put the new man's name on it and send it to the company. . . My business is to keep things going. There is no other person has the same authority I had at the time these papers were served." Further quotation from the evidence in record in the *Nolen* case might be made; but from the foregoing we are of the opinion that "the jury were authorized to find that the person in question was an agent within the meaning of the Civil Code (1910), § 2258, rather than a mere servant," as was

said in the opinion in that case. It is not essential that an agent should be an officer in charge of the company's office and business. *Kimsey* v. *Macon Lumber Co.,* 136 *Ga.* 369 (71 S. E. 675).; *Central Georgia Power Co.* v. *Parnell,* 11 *Ga. App.* 781 (76 S. E. 157). The word "agent" in the statute is to be taken in its ordinary sense. *Southern Bell Telephone etc. Co.* v. *Parker,* 119 *Ga.* 721, 728 (47 S. E. 194). But the person served must be an agent of the company as distinguished from a mere subordinate employee or servant. *Id.; Smith* v. *Southern Ry. Co.,* 132 *Ga.* 57 (63 S. E. 801). The use of the word "agent" in association with the word "officer" in the statute indicates the legislative intent. The evidence demanded a finding that Mr. Hulsey was not such an agent of the railway and power company; and it was erroneous to refuse the interlocutory injunction.

> *Judgment reversed. All the Justices concur.*