22898. GEORGIA POWER & LIGHT COMPANY *v.* WILSON.

DECIDED MARCH 3, 1934.

*Wilson, Bennett & Pedrick,* for plaintiff in error.
*E. D. Rivers, C. N. Davie, J. F. Kemp, James M. Towery,* contra.

MacINTYRE, J. In an action for damages, brought by R. E. Wilson against Georgia Power & Light Company in the superior court of Clinch county, the plaintiff recovered a verdict and judgment for $6500.

The first question for determination is whether or not the

court erred in overruling the defendant's traverse and special plea to the jurisdiction, filed in connection therewith. In this connection we shall first consider the entry of service on the second original petition, made by C. F. Justice, deputy sheriff of Ware county, which states that he served the defendant company "by serving W. W. Brown, Jr., as manager in charge, with a true copy of the within petition and process by leaving said copy at his most notorious place of abode." It was agreed by the parties to the action that "the defendant is a corporation chartered under the laws of Georgia, with its principal office and place of business in Lowndes county, Georgia." The Civil Code (1910), § 2258, provides that a corporation may be served with process in two ways— (1) "by serving any officer or agent of such corporation," or (2) "by leaving the same at the place of transacting the usual and ordinary public business of such corporation." One or the other of these methods of service must be followed, and if the first method is pursued, it is mandatory that service upon the agent be personal. It follows that leaving a copy of the petition and process at the "most notorious place of abode" of the agent of the corporation constitutes no service upon the corporation. See *Stuart Lumber Co.* v. *Perry,* 117 *Ga.* 888 (45 S. E. 251); *Anderson* v. *Albany & Northern Ry. Co.,* 123 *Ga.* 318 (51 S. E. 342); *Ellis* v. *Southern Express Co.,* 27 *Ga. App.* 738, 742 (110 S. E. 43).

We come next to consider the following entry of service:

"State of Georgia, Clinch County.

"I have this day served the defendant Georgia Power & Light Company, by serving W. C. Wooten, cashier of the Clinch County Bank, agent for the Georgia Power & Light Company, personally with a true copy of the within petition and process. This the 16th day of September, 1931.

"Chas. Smith, Depty. Sheriff of Clinch County."

It is first insisted that the words in the return, "cashier of the Clinch County Bank," serve "merely to describe and identify the individual, and do not show service upon the Clinch County Bank as the agent of the defendant Georgia Power and Light Company." To sustain this contention plaintiff in error cites the following four cases: *Burnett* v. *Central of Ga. Ry. Co.,* 117 *Ga.* 521 (43 S. E. 854; 97 Am. St. R. 175); *State* v. *Sallade,* 111 *Ga.* 700 (36 S. E. 922); *Atlanta Brewing & Ice Co.* v. *Bluthenthal,* 101 *Ga.* 541 (28

S. E. 1003) ; *McDuffie* v. *Irvine,* 91 *Ga.* 748 (17 S. E. 1028). In the *Sallade* case it was held that a tax-execution against "F. T. Sallade, agent" was against Sallade as an individual, the word "agent" being descriptio personæ. In the *Bluthenlhal* case it was held that "an equitable petition against 'M. Teitlebaum, agent for Mrs. M. Teitlebaum, the latter being the former's wife,' is in substance a proceeding against the husband." In the *McDuffie* case the court held that "a declaration in the name of E. D. Irvine, 'agent for the Georgia Music House,' is amendable by striking out the descriptive terms following the plaintiff's name," the words following the plaintiff's name being "merely descriptive terms." The three cases last referred to are not determinative of the question presented by the record in the instant case. In *Burnett* v. *Central of Ga. Ry. Co.,* supra, it was ruled that "an entry of service of a summons of garnishment stating that the same was served 'personally on S. C. Hoge, agent in charge of the office of the Central of Georgia Railway Company,' does not show a service upon the corporation, but only upon the person named as an individual; the words 'agent in charge of,' etc., serving merely to describe and identify the individual."

In distinguishing service in garnishment proceedings from service in ordinary cases, Justice Lumpkin, speaking for the court in *Phillips* v. *Bond,* 132 *Ga.* 413, 421 (64 S. E. 456), said: "But the two classes of cases are quite different. . . In this State the original summons of garnishment is served, not a copy of an original which remains on file; nor is there any provision of law for keeping on file a copy of the summons thus served. *West* v. *Harvey,* 81 *Ga.* 711 (8 S. E. 449). The only evidence of record, showing to whom the summons is directed, is the entry of the officer. If his entry does not indicate service of a summons of garnishment directed to the corporation claimed to be garnished, there is nothing of record to show it." Referring to *Burnett* v. *Central of Ga. Ry. Co.,* supra, the opinion in the *Phillips* case continues: "As there was nothing to show to whom the summons of garnishment was directed save the entry of service, it might be presumed that the summons followed the entry, and that it was directed, not to the company, but to the agent personally. An execution or process against a named person, with added words "agent for" another, is a process against the person named, and not against the principal.

If a summons of garnishment was issued against Hoge, although described as the agent in charge of the office of the Central of Georgia Railway Company, and was served upon him, although the entry of service may have contained a similar description, he, and not his principal, was the garnishee. In the opinion Justice Cobb said: "This rule should, if anything, be more strictly applied in cases of garnishments than in ordinary suits." But while some of the expressions used in the opinion in that case might appear to have a broader application, they must be taken in connection with the case which was before the court. The ruling in regard to garnishment proceedings of the character indicated above is not controlling in a case where there was a regular suit by petition, a single corporate defendant, a process directed to the sheriff and attached to the petition, requiring the defendant named to appear at the next term of the court, and an entry by the sheriff (whose duty it was to serve that writ on the defendant named in it) showing an effort to make service of it, and that he had served the defendant's agent personally with a copy of such writ. That the *Phillips* case did not involve the precise question presented by the record we are considering appears from headnote 1 of that case, which is as follows: "Where suit was brought in the superior court against a corporation, process was issued directed to it, and the sheriff made a return stating that 'I have this day served the defendant's agt. [naming him] with a copy of the within writ, by handing copy to said agent,' such an entry of service was not void, and the record of the suit with the judgment thereon was not inadmissible as evidence on that ground." Nevertheless, after a careful reading of the *Phillips* case, and consideration of the authorities therein cited, we are of the opinion that in principle it controls the question presented by the record in the instant case adversely to the contention of plaintiff in error. In this case the petition names the Georgia Power & Light Company as the sole defendant; process is prayed against the "defendant," and directed to the sheriff of Clinch county; the process requires "the defendant Georgia Power & Light Company" to appear at the "next superior court held in and for said county," to answer plaintiff's demand; and the return of service, signed "Chas. Smith, Depty. Sheriff of Clinch County," shows personal service. We hold that the return of service shows service of the petition and

process on the Clinch County Bank as the agent of the Georgia Power & Light Company.

The next question for determination is whether or not the evidence warranted the court in concluding that the Clinch County Bank was such an agent of the defendant company as that service could be perfected on said company by serving said bank. R. H. Ferguson, district manager for the defendant company at Waycross, Georgia, testified in part: "I am familiar with the contract arrangement between the Georgia Power & Light Company and the Clinch County Bank during the year 1931. We agree to pay the Clinch County Bank $15 a month for the handling of our collections at Homerville. Bills were to be mailed to the Clinch County Bank for the benefit of the party making the collection, and he would, in turn, stamp this bill 'paid' when it was brought in by the customer, and send in the duplicate copy with the deposit slips to the Waycross office. No other duties were required of the . . bank respecting their contract. There was no other contract arrangement that required a duty of . . the bank to notify the Georgia Power & Light Company of any desire of the people of Homerville to have service cut in, or complaints, or anything of that sort. We had another man for that."

W. C. Wooten, cashier of the Clinch County Bank, testified in part: "Nothing is required of the Clinch County Bank respecting the collection of the accounts of customers of the Georgia Power & Light Company who do not come to the bank. . . There are other accounts other than the actual power. They have contract accounts, etc., for stuff they sell in the way of stoves and ranges and things of that kind, but we have nothing to do with anything other than accept money if the party wants to pay it. There is no arrangement between me personally and the Georgia Power & Light Company. The arrangement that I have testified about began, I believe, along in January, 1931, either January or February. . . They send a man around to see about the delinquent accounts. . . We then turn in the names of those stubs, or duplicate receipts, that are unpaid to the man. . . When a customer of the Georgia Power & Light Company desires to pay his bills in Homerville, whether for merchandise or current, he comes to the Clinch County Bank and makes payment. If a customer wants his lights cut out, a lot of times they come to me,

and just through courtesy I call up the Power Company on a reverse call and tell them that a certain party wants their lights disconnected. . . Parties do come to the bank and ask us to have their lights cut out. When they come . . I call the Power Company and ask them to send a man over to cut them out. The Power Company never objected to us acting for them in that capacity. When a man wanted a light put in, we handled that kinder in the same way. . . Sometimes occasionally they would pay me the meter deposit, but in other cases they would pay the man that came over to run the service. . . They never lodged any objection to us representing them in this manner. When we collect up bills for a given month, that money would be transferred in the usual forms of transfer from our bank to some other depository. The Power Company has lines in this town and serves customers here, and does a general electrical supply business here so far as furnishing high-powered current is concerned. It has a large number of customers." On recross, the witness Wooten swore: "When we would call them up to have these lines cut in, they would always cut them in. When we called up to have a line cut out, they would always respond and cut them out. When we accepted meter deposits . . they would transfer that meter deposit along with the rest of the funds. When we called them up about these various matters they would not give us any further instruction about it other than of course in the usual way of handling anything like that. They would ask me if the meter deposit had been paid, or something like that, or it would be paid when the man came over."

We have not set out all of the testimony, but enough of it, we think, to indicate that while the witnesses testified that the bank's duties were very restricted, it did perform other services regularly for the defendant company which that company consistently accepted. The contract between the bank and the defendant company was verbal, and under it the bank was paid $15 a month. The duties which were alleged to have been performed by the bank "as an accommodation," and without remuneration, appear to have been about as onerous as receiving deposits and making remittances. The business of the defendant company in Homerville appears to have been quite extensive, and the bank seems to have regularly performed services for the company in connection with that business. Did not the court, in passing upon the facts, have the right

to conclude that the defendant company was not paying the bank $15 a month for receiving deposits, keeping stubs and making remittances, but that the performance of the other numerous services said not to be within the purview of the contract was part of the consideration for the $15 paid the bank? In other words, we think that the court had the right to conclude that the various services rendered the defendant company by the bank came within the verbal contract between the bank and the defendant company.

If, then, as concluded above, the bank could be held by the court to be the agent of the defendant company in performing all the services indicated, was the bank such an agent as could receive service of process for the defendant company? Under section 2258 of the Civil Code (1910), service of a corporation "may be perfected by serving an . . agent of such corporation;" and the word "agent" is to be taken in its ordinary sense (*Southern Bell Telephone & Telegraph Co.* v. *Parker,* 119 *Ga.* 721, 728, 47 S. E. 194) ; but the agent served must be an agent of the defendant company as distinguished from a mere servant or employee. *Parker* case, supra. In this case, as in the *Parker* case, "the question is a close one," but in this case, as in that, in our opinion, the agent was such an agent as could receive service of process for the corporation. In neither of these cases was the agent a mere employee or a mere servant of the corporation, and we hold that the bank was such an agent as could receive service for the Georgia Power & Light Company. See particularly *So. Bell Telephone & Telegraph Co.* v. *Parker,* supra; also *Central Georgia Power Co.* v. *Nolen,* 143 *Ga.* 776 (85 S. E. 945) ; *L. & N. R. Co.* v. *Mitchell,* 6 *Ga. App.* 390 (64 S. E. 1134).

■ Error is averred in special ground 11 "because the court, in charging the jury as to the measure of damages sustained by plaintiff by reason of a decrease in his capacity to labor and earn money, erred in confining such charge to the measure of damages applicable in the event the injury was permanent and would continue to the end of plaintiff's life, and the court erred in omitting to give instructions to the jury as to the measure of damages for the decreased capacity to labor and earn money in the event the injury was not permanent." The ground further avers that "said principle of law was applicable and pertinent to the issues raised by the pleadings and evidence in the case, and should have been charged without written request."

It appears from the record that Wilson's shoulder was broken, and that, in knitting together, the broken parts of the bone were out of line. Dr. H. G. Huey testified in part: "The bone is fractured at the junction of the middle third and the outer third, and it is permanently out of line, and the chances are it always will be. . . I am of the opinion that he will never be able to use his left arm in climbing poles or doing heavy work with the same degree of ease that he did prior to his injury, or the same degree of safety or strength."

Dr. Bruce swore in part: "On examination I found he had . . the left clavicle or collar bone broken. He had some bruises about his body and two burns, one in the palm of his right hand, and one in his right leg. . . I set the bone as well as I could. . . I heard the testimony of Doctor Huey with respect to this injury here. It is in accord with my opinion as to the effect of this injury. . . Taking into consideration the age and the nature of the injury, and my observation of his condition, I would say that he is suffering a permanent weakness of his left shoulder and left arm. . . The collar bone is out of line, and it has a tendency to kind of throw his shoulder a little bit out of line."

The testimony of these two doctors is about all the testimony that goes directly to the question as to whether or not the injury was permanent or temporary. Our view of the case is that while the doctors strongly expressed their opinion that the injury was permanent, the jury were not absolutely bound by their opinions. The precise nature and extent of the wound was before the jury, and we think that the jury had the right from all the evidence in the case to determine whether or not the injuries were permanent or not. The general rule is that the ultimate weight to be given to the opinions of expert witnesses is for the jury, and that they may accept it, or reject it and act upon their own judgment as applied to the general evidence in the case. See *Alabama Great Southern R. Co.* v. *McKenzie,* 139 *Ga.* 410 (3) (77 S. E. 647, 45 L. R. A. (N. S.) 18). In this case the petition avers that the injury is permanent and the answer denies that allegation, and, as indicated above, we are of the opinion that the question of the permanency of the injury was for the jury. Having reached this conclusion, the judgment must be reversed under the following ruling in *Seaboard Air-Line Ry. Co.* v. *Brewton,* 150 *Ga.* 37 (2)

(102 S. E. 439) : "In an action for damages based on personal injuries, where under the pleadings and the evidence there was an issue whether the injuries were permanent or temporary in character, and the judge instructed the jury relatively to the measure of damages applicable to a case where the injury was permanent, but omitted to give instruction as to the measure of damages that would be applicable if the injury were not permanent, such omission, even without proper request for charge, would be cause for reversal."

The judgment being reversed for the reason stated above, and the remaining special grounds of the motion for a new trial involving matters that are not likely to recur upon another trial of the case, we shall make no reference to the general grounds of the motion for a new trial, and will conclude by stating that the judgment is reversed solely upon the eleventh special ground of the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*